IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Todd A. Hutchins, )<br>  Plaintiff, )<br> )<br>v. )<br> )<br>James C. Willett, et al., )<br>  Defendants. ) | 1:19cv149 (LO/IDD) |

MEMORANDUM OPINION

Todd Hutchins, a Virginia inmate proceeding pro se, has sued Captain Brian Hughes, an officer at Pamunkey Regional Jail, under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132–33, claiming that the captain retaliated against him for seeking a shower to accommodate his amputated right leg. [Dkt. No. 18]. Hughes has moved for summary judgment. [Dkt. No. 24].[1] Hutchins received the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 24], and filed a response in opposition. [Dkt. Nos. 30, 33]. Because the record does not reflect that Hughes unlawfully retaliated against Hutchins for seeking an ADA accommodation, the Court will grant defendant's motion for summary judgment on that ground. Since Hughes moved for summary judgment, however, the Fourth Circuit adopted a new test for analyzing First Amendment retaliation claims. Thus, the Court will deny summary judgment on the First Amendment claim without prejudice to defendant renewing the motion based on the Fourth Circuit's new standard.

---

[1] Four days before filing the motion for summary judgment, Captain Hughes moved for an extension of time to file the motion. [Dkt. No. 22]. For good cause shown, that motion shall be granted nunc pro tunc.

## I. Background

Hutchins, a right-leg amputee confined to a wheelchair, is an inmate at Pamunkey Regional Jail. In the operative complaint Hutchins alleges that he continuously asked Captain Hughes to modify the shower so that he would no longer have to bathe on the shower floor. [Dkt. No. 18]. In retaliation for doing so, Hutchins contends, Hughes transferred him from K-Pod, a minimum-security dormitory, to G-Pod, which he describes as medium/maximum security with 18-hours' daily lockdown and fewer privileges.

Captain Hughes moves for summary judgment and supports the motion with evidence describing his interactions with Hutchins while he sought an accommodation, recounted below. [Dkt. Nos. 24–25]. Hutchins arrived at the jail on September 11, 2018. [Def. Ex. A ¶ 4]. He was placed in K-Unit—a minimum security dormitory—on October 31, 2018. [Id. ¶¶ 4, 12]. Within two days of the transfer, he had filed his first inmate request about the shower, reporting that he had to bathe on the shower floor and declaring that the shower ran afoul of ADA requirements. [Def. Ex. C ¶ 6; Def. Ex. 8, p. 1]. Hughes did not become involved until Hutchins filed his fourth inmate request, on November 7, in which Hutchins reiterated his complaints. [Def. Ex. 8, pp. 1–4; Def. Ex. C ¶ 7]. In the response dated November 9, Hughes relayed that he spoke to maintenance, who, he says, "had better secured the bench to the wall" of the shower, thus fixing the shower's handicap seat. [Def. Ex. 8, p. 4; Def. Ex. C ¶ 8].

Hutchins continued to file inmate requests related to the K-Unit shower throughout November. On November 28, for instance, Hutchins notified the jail that he had "reached out to the United States Justice dept which handles ADA discrimination violations," and expressed that he "hope[d] I will not be retaliated against." [Def. Ex. 8, p. 8]. Hughes responded on December 3, asking how the shower needed to change to make it more accessible for him. [Id.]. Hutchins

2

replied the next day, explaining that "[t]he shower head is so low I have to sit on the floor to shower," and asked for someone to come to K-Unit so that he could point out the problem. [Id. at p. 9]. Hughes responded, "Maintenance has been notified to come see you to see what can be done to assist you." [Def. Ex. 8, p. 11]. When the maintenance work failed to satisfy Hutchins, Hughes personally spoke with Hutchins on January 7, 2019. [Def. Ex. 8, pp. 14–15; Def. Ex. C ¶ 16]. During the conversation Hutchins explained that the shower bench was in the corner, rather than in front of the nozzle. [Def. Ex. C ¶ 16]. Hutchins was given a shower chair but, he complained, it did not help because it was too tall. [Id.; Def. Ex. B, p. 8]. Hutchins then received temporary authorization to shower in the medical unit while the shower bench in K-Unit was being relocated closer to the nozzle. [Def. Ex. C ¶¶ 16, 18; Def. Ex. A4].

Hughes avers that the K-Unit shower, as modified, complies with American Correctional Association and ADA standards. [Def. Ex. A ¶ 7]. Yet, in an inmate request filed January 18, 2019, Hutchins reported that the modification "still does not work for me to have a safe shower." [Def. Ex. 8, p. 18]. Hughes visited Hutchins that day, and Hutchins showed him that "the distance of the bench from the water nozzle, and the height of the water nozzle did not allow him to get wet." [Def. Ex. C ¶ 18]. According to Hughes, though, "[t]he size of the shower did not allow the bench to be installed any closer to the water nozzle." [Id.].

In early March 2019 Hutchins filed a grievance seeking continuous use of the shower in the medical unit, reiterating that the K-Unit shower seat, as modified, still was too far from the water nozzle. [Def. Ex. A ¶ 8; Def. Ex. B]. Hughes refused to grant that request because it violated protocol and would create a potential safety risk to the civilian doctors, dentists, and nurses who work there. [Def. Ex. A ¶ 9]. Hughes ultimately concluded, "to further assist you with your showering requirements, you will be relocated to a unit that has a shower that may

3

better suit your needs." [Def. Ex. B, p.3]. Hughes attests that, at the time, "[i]t was believed that the G-Unit shower was more suitable." [Def. Ex. A ¶ 10].

Hutchins was transferred on March 11, 2019 to G-Unit, which is classified as medium/minimum custody. [Id.; Def. Ex. A1]. G-Unit has a smaller shower stall, in which a bench could be installed closer to the water nozzle. [Def. Ex. A ¶ 10; Compare Def. Ex. A4 with Def. Ex. A5]. Although the shower in G-Unit did not yet have a bench when Hutchins arrived, one was installed two days later. [Def. Ex. C ¶ 27]. Because inmates in G-Unit are housed in cells, rather than a dormitory, Hutchins views the transfer as punitive for seeking the shower accommodation. [Dkt. No. 30, Pl. Resp. in Opp. to Summ. J., p. 9]. But Captain Hughes avers that G-Unit would better accommodate Hutchins because it has ADA-accessible beds, adding that that and other amputee-inmates previously had been housed there. [Def. Ex. A ¶ 11; Def. Ex. C ¶¶ 35–36]. For instance, the G-Unit cells are larger and have individual sink and toilets that are unconnected, making it easier for wheelchair-bound inmates to maneuver around. [Def. Ex. C ¶ 35]. Indeed, during the period in which Hutchins had been complaining about the shower, he also had been filing inmate requests expressing dissatisfaction with his bunk assignments in the K-Unit dormitory. [Def. Ex. 9–12]. In particular, Hutchins expressed that various bunk assignments were unsatisfactory because parking his wheelchair created a safety issue. [Id.].

## II. Standard of Review

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (quoting

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)). In evaluating Captain Hughes's motion, the Court views the evidence, and draws all inferences, in the light most favorable to Hutchins, the nonmoving party. See E.W. by T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

### III. Analysis

#### A. First Amendment Retaliation

After Captain Hughes moved for summary judgment, the Fourth Circuit in Martin v. Duffy, 977 F.3d 294 (4th Cir. 2020), modified the approach for analyzing First Amendment retaliation claims. Because Hughes's argument under the First Amendment relies on the pre-Martin standard, the Court will deny summary judgment on the First Amendment claim without prejudice to defendant renewing his motion with arguments consistent with Martin.

#### B. ADA Retaliation

The Fourth Circuit has not applied the analysis announced in Martin v. Duffy to ADA-retaliation claims. See Laird v. Fairfax Cnty., Va., 978 F.3d 887, 892 (4th Cir. 2020) (applying McDonnell Douglas framework to ADA-retaliation claim four days after Martin). For Hughes to survive summary judgment, then, the undisputed facts must establish a prima facie case of retaliation directly or, if not, indirectly by showing that (1) he engaged in protected activity, (2) he suffered an adverse action, and (3) the protected activity was casually connected to the adverse action. See Coursey v. Univ. of Md. E. Shore, 577 F. App'x 167, 175 (4th Cir. 2014); Rhoads v. F.D.I.C., 257 F.3d 373, 392 (4th Cir. 2001). If those elements are met, the burden shifts to the defendant to present undisputed facts demonstrating a legitimate, nonretaliatory reason for the adverse action. Rhoads, 257 F.3d at 392. Finally, if the defendant can meet that burden, the plaintiff must demonstrate that the proffered reason is pretextual for unlawful retaliation. Id.

Captain Hughes principally argues that the housing transfer was not an adverse action. He further argues that, assuming Hutchins can demonstrate a prima facie case of retaliation, the housing transfer was made for two legitimate, nonretaliatory reasons: (1) The shower in G-Unit could be modified to adequately accommodate Hutchins's needs as a right-leg amputee; and (2) G-Unit has ADA-compliant cells that would offer greater maneuverability and safety for his wheelchair.

Summary judgment is warranted in Captain Hughes's favor on the ADA-retaliation claim. Assuming arguendo that Hutchins can establish a prime facie case of retaliation, the undisputed evidence demonstrates that Hughes provided legitimate, nonretaliatory reasons for the housing transfer. The evidence shows that Hughes continuously worked with Hutchins to find a satisfactory accommodation beginning in November 2018. Upon receiving Hutchins's first complaint, he contacted maintenance to make an accommodation. When Hutchins complained about that accommodation, Hughes asked him how the shower could be modified further to accommodate his needs. After receiving Hutchins's response, Hughes sent maintenance to make another accommodation. When that accommodation proved unsatisfactory to Hutchins, Hughes provided a shower chair, but Hutchins rejected the chair for being too tall. Yet another modification was then made. When Hutchins complained again, Hughes visited Hutchins so that he could see firsthand the problem: The distance of the bench from the water nozzle combined with the height of the water nozzle did not allow Hutchins to get wet in the shower. But as Hughes avers—and as can be viewed in the picture of the K-Unit shower submitted as evidence—the bench could not be installed any closer to the water nozzle. By early March 2019, Hutchins was still filing grievances complaining about the K-Unit shower's inadequacy. The evidence shows that on March 11, 2019, Hutchins was transferred to G-Unit for two reasons:

(1) The shower could be modified in a manner that allowed a bench to be installed close to the water nozzle; and (2) G-Unit had ADA-accessible beds, which would resolve other grievances Hutchins had filed related to the safety of his wheelchair in the K-Unit dormitory. These are legitimate, non-retaliatory reasons for the transfer.

Hutchins protests, arguing that these reasons are pretextual because the G-Unit shower was not modified until two days after his transfer. But the two-day delay does not change the fact that Captain Hughes "believed that the G-Unit shower was more suitable based on Hutchins' complaint that the bench was too far from the nozzle." [Def. Ex. A ¶ 10]. That the accommodation was delayed by two days does not render Hughes's justifications for the transfer pretextual. Indeed, when Hutchins was assigned to G-Unit, the problem with parking his wheelchair was immediately solved, and the problem with the shower was solved in just two days. What's more, Hutchins has not submitted any evidence suggesting that a shower in another dormitory-style housing unit could have been modified in a satisfactory manner.

### III. Evidentiary Motions

Hutchins has peppered the Court with a dozen motions related to discovery, which has not been ordered in this case. The motions principally relate to his quest to open discovery, primarily to challenge the submission of medical evidence in support of defendant's motion for summary judgment. The Court will address, in turn, why each motion is moot or meritless.

#### A) Motion to Preserve Evidence

Hutchins moves the Court to order Captain Hughes to preserve (1) video footage of G-Unit from March 13, 2019 through March 24, 2019, and (2) all request slips that he submitted to Captain Hughes. [Dkt. No. 31]. Hutchins contends that this evidence "will prove defendant's perjury," which the Court interprets as his intent to use alleged evidence to create a dispute of

7

material fact. [Id.]. Hutchins has not explained what facts could be obtained or rebutted by viewing the video footage. As for the request slips, attached as evidence to Hughes's reply brief is every inmate request he directed to Captain Hughes for a response. [Def. Ex. C ¶ 5; Def. Ex. 8]. Therefore, the motion will be denied.

### B) Motion for Paperwork

In this motion Hutchins seeks (1) a request slip that he submitted to Captain Hughes on November 9, 2018, in which he asks Hughes to come to look at the shower in K-Unit, and (2) "releases that the plaintiff signed giving the defendant access to his medical and mental health records they have submitted to the Court." [Dkt. No. 34]. As previously noted, attached as evidence to Hughes's reply brief is every request Hutchins submitted either directly to Hughes and/or pertaining to the shower issue. [Def. Ex. C ¶ 8; Def. Ex. 8]. That request, therefore, is moot. As for the "releases" Hutchins seeks, they are not relevant to his ADA or First Amendment claims, and so that request will be denied. See Fed. R. Civ. P 26(b)(1).

### C) Motion for Information

Hutchins filed a "motion for information," which the Court interprets as a motion to open discovery and serve interrogatories on defendant Captain Hughes. Hutchins seeks to ask Hughes (1) "how he came to have in his possession his Exhibit 14, and Exhibit 15 in his reply brief," and (2) the names of the companies who provide mental health and medical services at Pamunkey Regional Jail. [Dkt. No. 37]. Because this information is not relevant to Hutchins's ADA and First Amendment claims, the motion will be denied. See Fed. R. Civ. P 26(b)(1).

### D) Motion for Joinder of Claim

Hutchins filed a "motion for joinder of claim," which the Court interprets as a motion to amend the complaint. [Dkt. No. 38]. Hutchins purports to add claims against Captain Hughes for

"breaking federal civil law Title ii Rule 5.2(A) privacy" because Hughes submitted evidence containing his social security number and medical information protected by The Health Insurance Portability and Accountability Act of 1996 (HIPAA). [Id.]. He seeks $1 million in damages. The Court interprets this motion as seeking to bring two new claims: (1) a claim for violating Federal Rule of Civil Procedure 5.2, which restricts parties from submitting materials that include a person's full social security number; and (2) a claim for violating HIPAA. The Court may deny a motion to amend the complaint if amendment would be futile because the proposed claim could not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Davison v. Randall, 912 F.3d 666, 690 (4th Cir. 2019). Here, Hutchins's proposed claims could not survive a motion to dismiss because neither law provides a private right of action. See Meadows v. United Servs., Inc., 963 F.3d 240, 244 (2d Cir. 2020) (HIPAA); In re Maple, 434 B.R. 363, 370 (Bankr. E.D. Va. 2010) (HIPAA); Carmax Auto Superstores, Inc. v. Sibley, 194 F. Supp. 3d 392, 402 (D. Md. 2016) (Rule 5.2). Thus, the motion will be denied.

### E) Motion to Amend and Remove Exhibits

Hutchins has filed a "motion to amend and remove exhibits," which the Court interprets as a motion to strike and to seal evidence. [Dkt. No. 43]. First, Hutchins seeks to strike evidence containing his medical records because, he urges, they are protected by HIPAA. Although his asserted basis for striking the evidence is unclear, it appears that Hutchins seeks to assert that his medical records, which were not released via HIPAA protocols, are privileged. But "HIPAA did not give rise to a physician-patient medical records privilege." United States v. Bek, 493 F.3d 790, 802 (4th Cir. 2007). Moreover, HIPAA applies only to "covered entities"—health plans, health care clearinghouses, and healthcare providers. See 45 C.F.R. § 160.102–160.103. As a

correctional officer, Captain Hughes is not a covered entity. Thus, the motion to strike in this regard will be denied.

Second, Hutchins seeks to remove from public access defendant exhibits 14 and 15; the Court interprets this portion of the motion as a motion to seal records. Defendant exhibit 14 is a suicide-watch record for Hutchins dated November 7, 2019. Defendant exhibit 15 is a mental health record from April 9, 2019. Before sealing any judicial record, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000). Here, a less drastic alternative exists. Captain Hughes could redact the portions of defendant exhibits 14 and 15 that disclose material other than what supports his averments in paragraphs 38 and 39 of the declaration attached to his reply brief. Therefore, the motion to seal will be granted in part to the extent that Hughes will be ordered to resubmit redacted versions of defendant exhibits 14 and 15.

### F) Motion for Continuance

Hutchins moves for a continuance, asking the Court to defer ruling on Captain Hughes's motion for summary judgment until the officer divulges who provided Hutchins's medical records, so that he may add those persons as defendants in this lawsuit. [Dkt. No. 44]. As explained above, Hutchins may not amend his complaint to add claims related to the release of his medical records. Therefore, a continuance to permit discovery of those names is not necessary and the motion will be denied.

## G) Motion to Produce Documents

In this discovery motion Hutchins seeks all inmate requests that Hutchins submitted to Hughes between March 13, 2019 and March 25, 2019. [Dkt. No. 45]. According to Hutchins, these materials "will show the move from K-Unit to G-Unit was not as the defendant says." [Id.]. This renewed request will be denied for the same reason as before: Hutchins already has the materials he seeks. The motion therefore will be denied as moot.

## H) Motion to Compel

Hutchins moves the Court to compel Captain Hughes to name all persons and entities who provided Hutchins's medical records and his social security number because he "has a right to know who violated his HIPAA rights." [Dkt. No. 46]. Again, this motion will be denied because the information sought is not relevant to Hutchins's ADA and First Amendment claims. See Fed. R. Civ. P 26(b)(1).

## I) Motion for Sanctions

Hutchins moves the Court under Federal Rule of Civil Procedure 37(b) to sanction Captain Hughes and his attorney for (1) placing his social security number, medical records, and mental health records in the public record, and (2) engaging in discovery in violation of Federal Rule of Civil Procedure 26. [Dkt. No. 47].

Sanctions are not warranted. First, Rule 37 pertains to sanctions for violating a discovery-related court order. Here, discovery has not been ordered, rendering Rule 37 inapplicable. Second, Hughes did not engage in discovery. As Captain of Pamunkey Regional Jail, he has access to inmate records kept at the facility.

Nor will the Court exercise its inherent authority to impose sanctions, to the extent Hutchins so seeks. Sanctions may be imposed against "a litigant or a member of the bar who has

acted in bad faith, vexatiously, wantonly, and for oppressive reasons." Stradtman v. Republic Servs., Inc., 121 F. Supp. 3d 578, 581 (E.D. Va. 2015) (internal quotation marks and citations omitted). First, the medical and mental health records were properly submitted to counter Hutchins's allegation that he suffered "serious mental health issues" after being transferred to G-Unit. [Dkt. No. 30, Def. Response Opposing Summ. J., pp. 7–8]. As for Hutchins's social security number, Hughes asserts that the disclosure in evidence attached to his reply brief was inadvertent. Indeed, Hughes promptly redacted and refiled the evidence after being notified of the error. There is no evidence of bad faith, and, therefore, the motion will be denied.

### J) Motion for Court Order

In this motion Hutchins asks the Court to open discovery, seeking production of documents. [Dkt. No. 48]. First, he seeks an order for Captain Hughes to produce an inmate request slip he submitted on November 9, 2019. Hutchins asserts that the slip will show that Hughes "did not work to resolving any handicap issue." [Id.]. Hughes has produced the November 9, 2019 slip; in it Hutchins asks for new headphones to replace his broken ones. [Dkt. No. 55, Ex. A]. This request therefore is moot. Second, Hutchins repeats his quest for all request slips that he submitted to Hughes from March 13, 2019 to March 25, 2019. Again, the Court observes that the materials Hutchins seeks are already in the record, rendering this request moot as well. Finally, Hutchins seeks any documented reprimands in Captain Hughes's work history at Pamunkey Regional Jail. Because this information is not relevant to whether Hughes unlawfully retaliated against Hutchins, the request will be denied. See Fed. R. Civ. P 26(b)(1).

### K) Motion for Court Order

In this motion Hutchins again ask this Court to order Captain Hughes to produce inmate request slips submitted to Hughes from March 13, 2019 through March 25, 2019 and another

from November 9, 2018. [Dkt. No. 56]. He contends the requests are missing and, if produced, will demonstrate that defendant has "committed perjury." [Id.]. In response, Hughes has submitted all of Hutchins's request slips from July 2017 through November 2019. This renders Hutchins's motion moot, and, thus, the Court will deny the motion.

### L) Motion under Rule 28 U.S.C. § 1746

Finally, Hutchins filed a "motion under Rule 28 U.S.C. § 1746" seeking contempt charges against Captain Hughes and his attorney. [Dkt. No. 57]. Contempt charges—civil or criminal—are not warranted. In either case, to hold a person in contempt, that person must have violated a court order. See Ashcraft v. Conoco, Inc., 218 F.3d 288, 295, 301 (4th Cir. 2000). Neither Hughes nor his attorney have done so. Therefore, the motion will be denied.

### IV. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this Memorandum Opinion, the defendant's motion for summary judgment [Dkt. No. 24] will be granted as to the ADA claim and denied without prejudice as to the First Amendment claim. Defendant may renew his motion for summary judgment on the First Amendment claim consistent with the Fourth Circuit's new standard announced in Martin v. Duffy. Additionally, plaintiff's miscellaneous motions discussed above will be denied through that same Order.

Entered this 16th day of February 2021.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge